Hillsborough, ⎱
Dec. 6, 1921. ⎰

MAXWELL ICE COMPANY *v.* BRACKETT, SHAW & LUNT COMPANY.

One who acts upon a false representation made to induce him to change his position may recover in case for negligence the damages he sustains, if the person making the representation ought to have known it was false.

Representations by an expert on power to one not having equal knowledge as to the amount of energy which standard makes of motors and engines will develop are not matter of opinion or "sellers' talk" but are statements of facts.

A negligent misrepresentation is actionable if it is the proximate cause of the position taken in reliance thereon, though not the sole inducement thereto.

If a misrepresentation is negligently made, or negligently allowed to stand, the party injured by relying upon it must show that he acted as a reasonably prudent man in so doing.

A stipulation in a contract of sale that the vendee may exchange the article is not a bar to an action for negligent misrepresentation; and his exercise of such right with knowledge of the misrepresentation is not a waiver of an action therefor.

CASE, for negligent and false representations with respect to the sale of an engine. Defendant's motions for a nonsuit and for a directed verdict were denied, subject to exceptions. Transferred from the January term, 1921, of the superior court by *Sawyer,* J.

The plaintiff signed the following order: "To Brackett, Shaw & Lunt Co., Somersworth, N. H. You will please ship by freight to Manchester, N. H., to be delivered f. o. b. cars factory about the 7 day of May, 1918, one of your 45 H. P. Davis Engines. Saw mill pattern. I am to have benefit of car rate of freight from factory to Somersworth. You are to allow exchange for 10 ds. for a 65 H. P., I to have full allowance if I do not damage engine beyond usual wear. In case of exchge. I am to pay all freight costs on both engines. . . . for which I agree to pay $1,475.00 as follows: At the time of delivery,

Cash . . . $400.00 . . ." The further material facts appear in the opinion.

*Arthur S. Healy*, for the plaintiff.

*Taggart, Tuttle, Wyman & Starr* (*Mr. Wyman* orally), for the defendant.

Snow, J. The plaintiff was engaged in sawing oak and pine timber at Amoskeag with a portable sawmill propelled by a 35 horse-power (so-called) electric motor. He was under contract to saw pine timber upon a lot at Goffstown where electric power was not available. He therefore entered into negotiations with the defendant for the purchase of a kerosene engine to supply power in the place of his electric motor. The evidence tended to prove that he explained to the defendant's agent "thoroughly" and "fully" the uses for which he wanted the engine; that he stated to the agent that he thought he ought to have an engine of 65 horse power to operate his mill; that the agent thereupon told him that the defendant company had a 45 horse-power Davis engine that would be "suitable" to his wants, "meet every requirement," "do just as good work as the electric motor," and do the work "just as well," and that the plaintiff "did not need" a 65 horse-power engine. At the same conference, but after the order was signed, the agent was taken to the mill and shown the electric motor and a blower not driven by the same motor.

The plaintiff first attempted to operate his sawmill at Amoskeag with the 45 horse-power engine and after some difficulty, with the aid of a man sent out by defendant at plaintiff's request, he "got it going" and tried the mill out on some oak logs, but it did not work very well. From this trial the plaintiff "didn't think" that the engine would do the work, but as the oak logs were "hard sawing" and he "wanted to give it a chance on pine" he removed the engine with his mill to Goffstown, where, upon trial, the engine continued to show such lack of power that the mill "would absolutely stop right in the middle of a log" and produced only about fifty per cent. of the daily cut usual for such a mill. The defendant sent to Goffstown its representative who conceded that the engine did not have sufficient power to run plaintiff's mill, although it tested 45 horse power. Thereupon the plaintiff requested the defendant to exchange the engine for a larger one, and a 65 horse-power engine was substituted nine or ten days later, during which time the mill was shut down. This engine ran the mill.

The defendant in its brief and argument contends (1) that there is no evidence that defendant's agent knew the true facts or that he had reason to believe that his representations were false; (2) that the alleged misrepresentations were non-actionable promises; (3) that the evidence conclusively shows that the plaintiff did not rely on defendant's representations; (4) that there was conclusive evidence of plaintiff's contributory negligence; and (5) that the plaintiff waived his right of action, if any, by availing himself of the right to exchange engines under the provisions of the order.

1. The defendant had been in business five years or more, was the agent for the sale of the Davis gasoline engine, and dealt more or less in electric motors. The defendant's agent qualified as an expert witness on power. He testified that the leading makers of electric motors rated their motors to "develop a constant load of 25 per cent. over load, and temporary load of 40 to 50 per cent. over load;" and that the plaintiff's motor would develop possibly 40 per cent. or "nearer 15 horse power" more than its rated capacity. It does not appear that plaintiff had this technical knowledge. It could be found from the foregoing that the defendant's agent knew or had reason to believe that the plaintiff's motor, although rated as 35 horse power, in fact developed 49 to 52 horse power temporary overload; that he nevertheless represented to plaintiff that the Davis engine which tested only 45 horse power would be suitable to his wants, meet every requirement, and "do just as good work" as the plaintiff's motor. It could be further found that the margin of four to seven horse power between the relative capacities of the motor and the engine accounted for the insufficiency of the latter to operate the mill. While the defendant's agent at the trial declined to qualify as an expert on "sawmills," it does not appear that he advised the plaintiff of this limitation of his knowledge when he assumed to assert the sufficiency of the engine to operate the mill. It is the duty of one who volunteers information to another not having equal knowledge, with the intention that he will act upon it, to exercise reasonable care to verify the truth of his statements before making them. See 14 Harv. Law Rev. 189, 190, 197. "A positive statement . . . not only includes a representation that the fact is as stated, but also the further representation that the maker knows it to be so." *Spead* v. *Tomlinson*, 73 N. H. 46, 61. It could be found from the foregoing that the agent's statement constituted representations of material facts which he either knew or ought to have known were false. In this state, a person who acts upon a false

representation made for the purpose of inducing him to change his position may recover the damages he sustains in an action of negligence when the maker of the statement ought to have known it to be false. *Cunningham* v. *Company*, 74 N. H. 435, 437; *Shackett* v. *Bickford*, 74 N. H. 57, 60.

The fact that the agent did not see the electric motor and the manner in which it was hitched up to the mill, with the blower driven by another motor, until after the order was signed, does not relieve the defendant. Plaintiff's writ counts, not on a breach of the contract, but upon negligence. If, having reason to believe that the representations he had already made were untrue, and knowing that the plaintiff intended to act on them, the agent negligently allowed his misrepresentations to stand, his silence became as operative and misleading as a positive statement or act would have been, and when such is the case, a jury would be warranted in finding that the silent conduct had ceased being passive and had become an active misrepresentation. *Conway Nat. Bank* v. *Pease*, 76 N. H. 319, 326, 328, 335. In negligently allowing his misrepresentations to stand, the defendant's agent violated his legal duty none the less clearly because the plaintiff had already affixed his signature to the order for the engine.

2. Representations by an expert on power to one not having equal knowledge as to the amount of energy which standard makes of motors and engines will develop, are not future promises, but are statements with reference to known facts based on tests and mathematical computations. Such representations differ materially from "sellers' talk" or mere opinions expressed to one having equal knowledge or equal opportunities for knowledge. In "the case of an expert stating to a non-expert his opinion on matters requiring peculiar skill or knowledge . . . it is difficult to see why a plaintiff (who acts reasonably in relying on the statement) may not recover against one who negligently volunteers an erroneous 'opinion,' intending the plaintiff to act upon it, and knowing that substantial loss is likely to follow if the 'opinion' proves incorrect. . . . Negligent misstatement exists just the same, whether it be due to carelessness in forming a belief or to carelessness in the mode of expressing one's belief." 14 Harv. Law Rev. 197, 198.

3. It is true that there was evidence of other inducements beside the representation in question, such as the lesser cost of the smaller engine, its lightness for moving, and possibly a quicker delivery, as the defendant had these engines in stock while the larger engine was

only in transit. So, too, the contractual right for ten days to exchange the lighter for the heavier engine, with loss only of the extra freight charge and delay incident to the exchange, was an inducement. But it was not necessary that the agent's false representation as to the efficiency of the engine should have been the sole inducement to the contract. *Braley* v. *Powers*, 92 Me. 203; *Safford* v. *Grout*, 120 Mass. 20, 25; *Light* v. *Jacobs*, 183 Mass. 206; *Sleeper* v. *Smith*, 77 N. H. 337, 339; *Scholfield Gear & Pulley Co.* v. *Scholfield*, 71 Conn. 1; *Handy* v. *Waldron*, 19 R. I. 618; *Kley* v. *Healy*, 127 N. Y. 555; *Ochs* v. *Woods*, 221 N. Y. 335; *Strong* v. *Strong*, 102 N. Y. 69. If the plaintiff would not have entered into the contract but for such representation, it was the proximate cause of his loss as the term is used in the law of torts. The fact that there were other contributing causes not due to plaintiff's own negligence is not a defence. *Miner* v. *Franklin*, 78 N.H. 240, 241. The plaintiff testified that he relied "absolutely" on the agent's statement and that otherwise he "wouldn't have taken it [the engine] at all." This evidence is corroborated by his continued efforts at Amoskeag and at Goffstown to try out the engine. All inducements to the contract, including the defendant's negligent representation as to the sufficiency of the 45 horse-power engine to run plaintiff's mill, were competent evidence bearing upon the issue whether the plaintiff relied upon the latter, but no one or more of them is conclusive. "The weight and reliability of competent evidence is to be determined exclusively by the jury." *Hewett* v. *Association*, 73 N. H. 556, 567; *Hubbard* v. *Leighton*, 79 N. H. 190, 191. It could be found that a man of average prudence would have relied upon the representations of an expert on power as to what an engine would accomplish when its proposed uses had been "thoroughly" and "fully" explained, and when, before the plaintiff was left to act upon the representations, the expert had examined the mill and the manner in which it was hitched up to its motive powers.

4. But the defendant contends that the plaintiff was guilty of negligence in his failure to notify the defendant, after the trial of the engine at Amoskeag, that he "did not think it would do the work," and that he claimed misrepresentation; that the plaintiff had no right to take the engine to Goffstown at the risk of the defendant, relying upon representations which he then believed to be untrue. "If a misrepresentation is negligently made, or negligently allowed to stand, the party injured by relying upon it must show that he acted as a reasonably prudent man in so doing." *Conway Nat. Bank* v. *Pease, supra*, 328. Was there evidence from which it could

be found that the plaintiff acted with reasonable prudence in his continued reliance upon the defendant's representations? The engine was tried out at Amoskeag on oak logs. The plaintiff testified that the oak logs were "hard sawing" and that he "wanted to give it [the engine] a chance on pine," that sawing oak was a "different proposition," that it "took longer to saw oak than it did pine." Plaintiff had the engine on his hands. It had not been tried out in the sawing of pine upon which alone the representations had been based. Was he careless in giving it such a trial because, from his experience with oak, he "did not think" that it would do the work with pine? Entertaining a belief upon insufficient evidence is not necessarily equivalent to being convinced. "Between mere belief and knowledge there is a wide difference." *Iron Silver Mining Company* v. *Reynolds*, 124 U. S. 374, 384. Belief "may be a passive condition of the mind, prompting in neither action nor declaration." *Grube* v. *Wells*, 34 Ia. 148, 151. "Belief admits of all degrees, from the slightest suspicion to the fullest assurance." Webster's Inter. Dic.; Shumaker & Longsdorf Cyc. Dic. See also Allen's Synonyms and Antonyms. *Hatch* v. *Carpenter*, 9 Gray 271, 274. Whether plaintiff's belief as to the probable result of a further trial of the engine under the conditions contemplated in defendant's representations had become a mental state, having which a man of ordinary prudence would have ceased further trial, was a question of fact. At just what stage of experimentation a mental state of reliance becomes one of non-reliance cannot be fixed by a rule of law. In other words, plaintiff's belief, based upon an unsatisfactory trial under adverse conditions, was not conclusive evidence either that he had ceased to rely on defendant's assurances or that he was negligent in trying further to verify them. Plaintiff's persistence in continuing the trial of the engine at the hazard of delay in his own work may as well be attributed to the abiding strength of the impression which the representations of an expert on power had made upon his mind as to a negligent disregard of the consequences to the defendant. "Unless the carelessness of the plaintiff was so apparent that all fair-minded and reasonable men must agree that he was negligent, the case was properly submitted to the jury." *Blood* v. *New Boston*, 77 N. H. 464, 465; *Bourassa* v. *Railway*, 75 N. H. 359, 360; *Miner* v. *Franklin, supra.*

5. Counsel claims that when the plaintiff signed the contract which provided for a right of exchange, he thereby agreed with the defendant as to what the remedy should be if the engine did not do

the work. This is not a necessary inference. By the terms of the contract, the right to exchange engines is not predicated upon the inability of the engine to develop the power represented, but appears to be absolute. The right might be exercised by the plaintiff for any reason, such as a desire to enlarge his mill by the installation of additional machinery, or, for that matter, from mere whim or caprice. Therefore, to sustain defendant's contention as to the construction of the contract, it must appear from a consideration of all the competent evidence, that the parties intended the contractual right of exchange not only to safeguard the plaintiff from losses, if any, arising by reason of the failure of the engine to come up to expectations based upon defendant's non-actionable commendations, but as a remedy for any damages which the plaintiff might suffer from defendant's negligent misrepresentations of fact. A mere statement of the question is an answer to it, since it cannot be assumed that the parties mutually contemplated and provided a remedy for actionable misrepresentations.

But the defendant contends that the exercise of the contractual right to exchange engines with a full knowledge of the incapacity of the 45 horse-power engine was a waiver as to the manner in which the contract had been obtained. If plaintiff was induced by the defendant's negligent misrepresentations to make an expensive experiment which he would not otherwise have made, the acceptance of the partial relief afforded by the exercise of his rights under his contract did not absolve the defendant from liability. It was the duty of the plaintiff to do what he reasonably could to avoid the effect of defendant's negligence. His failure to avail himself of the contractual right of exchange might have increased the damages flowing from the defendant's acts. The substitution of the larger for the smaller engine presumably lessened the loss to the plaintiff, and was material evidence upon the question of damages. The extent to which plaintiff was damaged by his reliance upon defendant's misrepresentations was a question of fact. *Conway Nat. Bank* v. *Pease, supra,* 335, 336. It must be assumed the defendant's rights in this regard were secured to it by instructions to the jury to which no exceptions were taken.

*Exceptions overruled.*

All concurred.