Carroll
No. 78-210

EDWARD J. AND LAURIE MERTENS

v.

WOLFEBORO NATIONAL BANK,
CLARENCE MARTIN ASSOCIATES,
& JAMES BENNETT

June 20, 1979

*Edward J. Mertens*, by brief and orally, pro se, for the plaintiffs.

*Sands & Patten*, of Ossipee, for defendant Wolfeboro National Bank, waived brief and oral argument.

*Clarence O. Martin*, pro se, waived brief and oral argument.

*Michael & Jones*, of Rochester, for defendant James Bennett, waived brief and oral argument.

BROCK, J. This is an action for damages arising out of a defective septic system in a house in Brookfield which the plaintiffs purchased from the Wolfeboro National Bank in the spring of 1976. The plaintiffs claim that when James Bennett, an employee of Clarence Martin Associates real estate brokers, showed them the house he negligently misrepresented to them that the septic system was in good repair. After trial to the Court (*Dunfey*, C.J.), a verdict was returned for the defendants. All questions of law raised by the plaintiffs' exceptions were reserved and transferred. We sustain the plaintiffs' exceptions and remand for a new trial.

The trial court found that Clarence Martin Associates and James Bennett were acting as agents for the Wolfeboro National Bank so that the bank was bound by their dealings with the plaintiffs. The evidence at trial was that the plaintiffs first visited the house in April 1976, accompanied by Mr. Bennett. Because the house had been vacant for some time, the electrical service was disconnected, and the utilities could neither be tested nor inspected due to an accumulation of snow. The plaintiffs testified that they asked Bennett about the condition of the well, plumbing, wiring, and septic tank and relying on his representations that they were all "okay," on May 7, 1976, entered into an agreement to purchase the property. The bank then agreed to allow the plaintiffs to occupy the house on a rental basis until the scheduled closing date, June 23, 1976. On or about May 15, 1976, the plaintiffs, having sold their former residence, moved, with all their belongings, into the Brookfield house. Two weeks later, the septic system failed and sewage backed up into the house. The trial court found, based on expert testimony, that the system had deteriorated over a period of years and was defective and unable to disperse effluent.

When confronted with the problem, the plaintiffs notified the bank's president. He advised them that the bank would not undertake repair of the septic system, but would allow rescission of the contract by the plaintiffs and the return of their deposit. Because the plaintiffs had already sold their former residence and taken possession of the new one, they considered the rescission proposal made by the bank inadequate and elected to proceed with the closing, expressly reserving their right to seek damages. The closing took place on June 23, 1976. The plaintiffs have continued to reside in the house and have installed a functioning septic system at their own expense.

In its decision the trial court relied on the fact that at the time of closing the plaintiffs elected to proceed with the purchase "with full knowledge and awareness of the actual situation that existed with respect to the septic system." Defendants' request for a ruling of law was granted as follows:

> That the plaintiffs knew of any defects in the premises prior to closing and as they went ahead and purchased the property knowing of any defects, their action constitutes a release and discharge of any liability that the defendant may have. That by purchasing the property knowing of the defects, the plaintiffs have waived any claim or claims that they may have against the defendant.

 This ruling is an erroneous statement of the law. When a buyer discovers that he has entered into a purchase and sale agreement in reliance upon a misrepresentation of a material fact, he may justifiably elect to rescind or disaffirm the agreement and refuse to proceed further with the transaction. *McCarthy v. Barrows*, 118 N.H. 173, 384 A.2d 787 (1978). In the alternative, he may elect to affirm the contract, keep its benefits, perform his obligations thereunder, and sue for damages. *Maxwell Ice Co. v. Brackett, Shaw & Lunt Co.*, 80 N.H. 236, 116 A. 34 (1921); D. DOBBS, REMEDIES § 1.5, at 15 (1973); *see* RESTATEMENT OF CONTRACTS § 484 (1937). The fact that the defendant bank, the party legally responsible for the misrepresentation, would have preferred that the plaintiffs rescind the agreement has no bearing on the latter's rights. Rescission is only appropriate if the parties can be placed *in statu quo*, and the defendant bank cannot force the remedy of rescission upon plaintiffs who have substantially changed their position. *See Barber v. Somers*, 102 N.H. 38, 45, 150 A.2d 408, 410 (1959). Here the plaintiffs changed

their position when they sold their former residence and moved into the purchased house on May 15, 1976. We hold that they did not, by consummating the purchase, waive their rights to seek an abatement of the purchase price or to sue for damages for negligent misrepresentation.

The record strongly suggests that the trial court considered its erroneous ruling dispositive of the case. We must therefore remand the case for a new trial. *Gendron v. St. Pierre*, 72 N.H. 400, 56 A. 915 (1903).

The trial court also ruled that "the plaintiffs have failed to carry the burden . . . [of] showing that the defendant Bennett breached a duty of exercising due care" in his representations. For the guidance of the parties and the court on remand, we take this opportunity to clarify the extent of that duty.

This case was tried prior to this court's decision in *McCarthy v. Barrows*, 118 N.H. 173, 384 A.2d 787 (1978), in which we articulated the applicable standard for negligent misrepresentations in sales of real estate. In that opinion we reaffirmed that " '[i]t is the duty of one who volunteers information to another not having equal knowledge, with the intention that he will act upon it, to exercise reasonable care to verify the truth of his statements before making them.' *Maxwell Ice Co. v. Company*, 80 N.H. 236, 238, 116 A.2d 34, 35 (1921)." 118 N.H. at 175, 384 A.2d at 788.

██ ██ The court found that no such duty attached in this case because the real estate agent, "Bennett did not have a higher degree of understanding of the situation" than the plaintiffs. "A purchaser generally is justified in relying on material statements of fact concerning matters peculiarly within the seller's own knowledge." *Colby v. Granite State Realty, Inc.*, 116 N.H. 690, 691, 366 A.2d 482, 484 (1976). Even where the buyer knows that the seller has never occupied the property himself, as here, he is entitled to assume that the seller of property has had more opportunity to investigate the condition of the premises, either by direct examination or by inquiry to the previous occupant, than the buyer has. "Representations made by one who is conscious that he has no sufficient basis of information to justify them" are as actionable as representations made with positive knowledge of their falsity, because in making them the speaker misrepresents not only the external facts but also the extent of his own information. W. PROSSER, TORTS § 107, at 701 (4th ed. 1971). If the defendants in fact had no opportunity to determine the condition of the

septic system, their duty to the plaintiffs consisted in not making representations that exceeded their knowledge. *Maxwell Ice Co. v. Company*, 80 N.H. 236, 116 A.2d 34 (1921).

*Exceptions sustained;*
*reversed and remanded.*

All concurred.