Carroll
No. 78-169

### ALAN D. MURRAY & a.

### v.

### PENTTI A. HYYRYNEN & a.

November 14, 1979

*Snierson, Chandler & McKean*, of Laconia (*Edgar W. McKean III* orally), for the plaintiff.

*Cullity & Kelley*, of Manchester (*John F. Cullity* orally), for the defendant.

PER CURIAM. Plaintiffs brought this action in assumpsit to recover damages for breach of certain warranties contained in a purchase-and-sale agreement. The principal questions for our consideration are whether the plaintiffs' failure to exercise their right to inspect the real property before the defendants transferred title precluded the plaintiffs from bringing an action to recover damages for breach of certain warranties, and whether the master's ruling that the plaintiffs were not so precluded was supported by the evidence. We hold that the plaintiffs were not precluded from bringing their action and that the master's ruling to that effect was supported by the evidence.

By written agreement dated September 4, 1975, the defendants agreed to convey to the plaintiffs certain real property known as the Robbin's Nest. The property, consisting of a motel and restaurant complex, had been acquired by the defendants in 1969. Although the motel had not been in use for almost ten years, the defendants reopened it and made certain repairs and improvements.

Under the terms of the agreement with plaintiffs, title was to be transferred on January 12, 1976. The agreement contained two clauses relevant to the issues before us. Paragraphs 8 and 9 read in part as follows:

> 8. In addition to the above, the Sellers covenant and agree that:
>
> a) All plumbing, electrical, and heating systems are in proper condition, and that the electrical system has the proper amperage . . .
>
> d) They stipulate that the septic system has been installed according to law and is separated from the well at a safe distance, and that said system is not now in violation of the law.

9. This sale is contingent upon the following terms and conditions . . .

2) That the purchasers, upon inspection and tests, determine that the representations set forth in Paragraph 9 hereof are correct and accurate;

3) That the purchasers, upon inspection and test, determine that the buildings on the premises are structurally sound.

If the Purchasers are unable to obtain said financing, or if inspection and/or testing reveals that the representations or other conditions set forth above are unsatisfactory or inaccurate, then the Purchasers shall have the right to declare this contract null and void and obtain the full return of their deposits.

If the Purchasers intend to elect such remedy, they shall notify the Sellers, or their agent Chapman Realty, at least one week prior to the closing.

Paragraph 9(2) refers to inspection and tests set forth in paragraph 9. There are no representations set forth in paragraph 9, however, and paragraph 9(3) contains its own condition. It would appear that the reference to paragraph 9 is in error and should read paragraph 8; the master apparently came to the same conclusion.

Following execution of the agreement, the plaintiffs visited the premises from time to time, but did not exercise their right of inspection and tests. After transfer of the premises, plaintiffs claim to have had difficulties with various systems. They proceeded to make certain repairs and improvements, including a new electrical system, heat exchanger, septic system and well.

Suit was brought and the matter was heard by a Master (*George W. Walker*, Esq.) who awarded damages for the electrical, heating and septic systems, but not for the well. Defendants' exceptions were transferred by *Brock*, J.

Defendants first argue that the court erred in denying their unnumbered request for a ruling of law that: "[t]here is no evidence of fraud or deceit and thus the doctrine of contributory negligence is applicable to plaintiffs. *See Smith v. Pope*, 103 N.H. 555, 176 A.2d 321 (1961)." The master ruled as follows: "denied as worded. See decision."

■ To begin with, the request did not ask for a finding of no fraud but rather, for a ruling that there was *no evidence of fraud*. The master was correct in denying the request as worded, because there was such evidence in the record. Moreover, the request was irrelevant because it applied to actions for deceit and not actions grounded in warranty. Here, recovery was based on the latter theory. *See Sargent v. Janvrin*, 109 N.H. 66, 242 A.2d 73 (1968).

.[2] The master properly ruled that the plaintiffs were not required to exercise their right to inspect the real property before the defendants transferred title. He found that the plaintiffs instead relied on the representations in paragraph 8 and that in so doing they acted reasonably. *See* 8 S. WILLISTON, CONTRACTS § 973 (3d ed. 1964). Paragraph 9 itself contains a provision that "[i]f the Purchasers *elect* such a remedy, they shall notify the Sellers . . . at least one week prior to closing." (Emphasis added.) This indicates that plaintiffs had an election of remedies. Moreover, there is nothing in the agreement which provides for a forfeiture of the right to sue for breach of warranty upon plaintiffs' failure to inspect and test before the transfer of title. We find no error in the court's ruling in this regard. *See Mertens v. Wolfeboro National Bank*, 119 N.H. 453, 402 A.2d 1335 (1979); *Bergeron v. Dupont*, 116 N.H. 373, 359 A.2d 627 (1976). *See generally* 12 S. WILLISTON, CONTRACTS § 1512 (3d ed. 1970) (buyer should not lose rights because of failure to investigate when he believed seller's representation).

■ The defendants' contention that plaintiffs failed to inspect in order to avoid actual notice of the condition of the premises is answered by the master's finding that plaintiffs' failure to inspect was not unreasonable. The record below shows that it would have been difficult for the plaintiffs to determine whether the septic system met legal requirements, and that the defendants were knowledgeable in the matter of the sewerage and septic systems. Reliance on their representations was not unreasonable.

■ The defendants' argument that the court erred in the computation of damages need not detain us long. There was ample evidence that the electrical system was overloaded, heavily fused, and in a dangerous condition, and that the amount awarded was the reasonable cost of making it safe. The heat exchanger was cracked and the $90.30 awarded to replace it was reasonable. Finally, there was evidence supporting the conclusion that, contrary to the warranty,

the septic system did not meet the requirements of law, and that the award of $9,251.93 was reasonably required to bring it into conformity. *See Sargent v. Janvrin supra.*

*Exceptions overruled.*

BROCK and KING, JJ., did not sit.