Pettigrew *v.* Chellis.

PETTIGREW *v.* CHELLIS.

In case for fraud and deceit in the sale of property not warranted, the *scienter* is material, and must be both averred and proved.

Where the *gist* of the action is an alleged false and fraudulent representation made by the defendant in the course of negotiations, as an inducement to a contract, the plaintiff must aver and prove that the defendant knew the representation to be false when he made it; and this proof is not established by showing that although the defendant believed it to be true when he made it, yet, after the negotiations were concluded and had been consummated and merged in a written contract without warranty, he ascertained it to be false, and neglected to communicate his knowledge to the plaintiff.

CASE, for deceit in the sale of a farm. The evidence tended to show that on the 18th day of November, A. D.

1856, the parties met, and negotiations for the sale and purchase of the farm were had; that it was then agreed orally between the parties that the plaintiff should buy, and the defendant should sell the farm; that the plaintiff should pay $500 on the first day of April, then next, and should pay the balance of $2,000 in annual instalments of $100 each, which last payment should be secured by mortgage of the farm, and that the plaintiff should have possession, and the deeds and other writings be delivered on the payment of said $500 on said first day of April. Accordingly, a deed of the farm, from the defendant to the plaintiff, was executed; also, a mortgage from the plaintiff to the defendant, of the same premises, a note for $2,000; also a note for $400, payable on the first day of April, A. D. 1857; and the plaintiff then paid $100 in money, for which he took the defendant's receipt, in the following form: viz.,

"November 18th, 1856.

Received of Alden Pettigrew, one hundred dollars, in part payment for a farm this day deeded to said Pettigrew.       (Signed)       ENOCH F. CHELLIS."

It was finally agreed that the deed, the mortgage and the notes, should be sealed up in a package, and deposited in the hands of Mr. Breck, town-clerk of Cornish, and no paper should be delivered to either party without the consent of both.

The evidence was conflicting as to the knowledge of the defendant, on the said 18th day of November, of the falsehood of the representations complained of in the declaration, but the defendant admitted that he did have the knowledge that the farm did not hold out in quantity before the first day of April, when, with the consent of both parties, said $400 note was paid and the other papers were duly delivered.

The plaintiff's counsel requested the court to charge the jury that if the deeds and other writings were depos-

ited with the town-clerk, not to be delivered to either party without the consent of both, the bargain would not be complete till the writings were so delivered, and that if the defendant, at any time before the writings were so delivered, knew that the farm was materially less than he had represented, and did not communicate the fact to the plaintiff, the plaintiff's action would be maintained in that particular. The court declined so to instruct the jury, but did instruct the jury that the plaintiff, to recover in this action, must show that the defendant made material representations or statements concerning the farm, the number of acres embraced in the whole of it, or in the meadow, or as to the price it would bring, upon which the plaintiff was induced to rely when he made the purchase and agreed to the terms of the same, on or before the 18th of November, 1856; that these statements or representations were false, and that the defendant knew them to be so, when he made them; and that if either of the representations of the defendant were false, and the defendant knew it to be so, the plaintiff's action could be maintained; that in consequence of the plaintiff's placing confidence and reliance upon such false or fraudulent representations of the defendant, he had suffered actual damage; that it was competent for the jury to consider the evidence in relation to the deposit of the deeds and writings with the town-clerk, and to inquire whether the purpose was not to secure the payment of the $400 note to the defendant, it not being embraced in the deed of mortgage from the plaintiff; that the consideration and terms of the deeds and the whole contract were so far settled and closed, on the 18th of November, as not to bind the defendant in this action unless he then knew his representations to be false or fraudulent. The jury, having returned their verdict for the defendant, the plaintiff excepted to the ruling of the court, moved to set aside the verdict and for a new trial.

*E. L. Cushing,* for the plaintiff.

It is plain that, by the statute of frauds, no action could be maintained on the contract for the sale of the farm, until the writings were delivered. It is equally clear, that the last and final arrangement of the parties left the delivery of the deeds dependent on the consent of both parties. The legal effect of that arrangement was matter of construction for the court, and not for the jury. The contract declared on was that for the sale and purchase of the farm, which could not be complete so long as either party should withold his consent.

*Wheeler & Faulkner,* for the defendant.

The instructions of the court were correct, and the suit could not be maintained, unless the defendant knew that the representations were false and fraudulent at the time they were made. *Hanson* v. *Edgerly,* 29 N. H. 343; *Weeks* v. *Burton,* 7 Vt. 67; *Tryon* v. *Whitmarsh,* 1 Met. 1; *Mahurin* v. *Harding,* 28 N. H. 128; *Pasley* v. *Freeman,* 3 T. R. 51; *Lord* v. *Goddard,* 13 How. 198.

The instructions given were quite as favorable to the plaintiff as the law would justify, and the court rightfully declined to give the instructions asked for by the plaintiff's counsel.

The negotiations between the parties were closed on the 18th day of November, and it only remained for the plaintiff to pay $400, and the parties to exchange papers. For all other purposes the bargain was closed, and was so treated by the parties. If the right existed to open negotiations anew, on the first day of April, it is enough that neither party chose to do it, or was bound to do it. Representations believed to be true, at the time they are made, do not become fraudulent by means of information subsequently obtained.

Pettigrew *v.* Chellis.

FOWLER, J.   The principal questions arising in this case have so recently been considered by the court in *Paye* v. *Parker*, 40 N. H. 47, that it is hardly necessary to do more than refer to the report of that decision.   Although there was some difference in the terms of the agreements under which the papers were deposited in that case and the present, yet it seems quite clear that this difference cannot change the rule of law applicable to the conduct of the parties.   The plaintiff here, as there, brought his action to recover damage for fraud and deceit in the representations accompanying negotiations for the sale of real estate.   Here, as there, the *gist* of the action was the alleged wilfully false and fraudulent character of those representations; the unjust and wrongful purpose of the defendant, in intentionally and knowingly contriving falsely to mislead and deceive the plaintiff to his damage.   If the representations relied upon as the ground of action were honestly made and believed by the defendant at the time of the negotiations and of the bargain and conveyance, no knowledge of their incorrectness subsequently acquired by him, after the negotiations had been consummated in a written contract, could make those representations wilfully false and fraudulent; nor could his omission to communicate such subsequently acquired knowledge to the plaintiff have that effect, although the papers were to be delivered only with the consent of both parties.   If the defendant honestly believed the farm to contain the quantity of land represented by him at the time it was conveyed, and there was, as would seem to have been the case, no warranty of the quantity in the deed, but it was purchased and sold as it might turn out to be, it is difficult to see what legal remedy the plaintiff could have, or what wrong he could complain of, if it proved to contain a less number of acres than both parties honestly supposed it to consist of.   Upon the facts found in the present case, suppose the defendant had informed the plaintiff, before

the delivery of the papers, that the quantity of land in the farm was actually less than he had honestly believed and represented it to be, what legal remedy could the plaintiff have had? How, and upon what ground of law or equity, could he have avoided fulfilling the contract entered into as the result of those negotiations, by paying his notes and taking the deed? But it is unnecessary to determine this inquiry.

The only question here is, whether the neglect to communicate subsequently acquired information, could operate back and make representations honestly made, and believed to be true, in the course of negotiations that were entirely completed and finished, wilfully false and fraudulent; and we think it entirely clear that it could not.

In *Chandelor* v. *Lopus,* Cro. Jac. 4, Lopus had brought an action on the case for deceit, in the King's Bench, alleging that Chandelor, being a goldsmith, and having skill in jewels and precious stones, had a stone which he affirmed to be a bezoar stone, and sold it to him for one hundred pounds, when in truth it was not a bezoar stone. The defendant pleaded not guilty; after verdict and judgment for the plaintiff, error was brought in the Exchequer Chamber, because the declaration contained not matter sufficient to charge the defendant: viz., that he warranted it to be a bezoar stone, nor that he knew it was not a bezoar stone; for it might be that he himself was ignorant whether it was a bezoar stone or not. And all the justices and barons (except Anderson) held that for this cause it was error: for the bare affirmation that it was a bezoar stone, without warranting it to be so, is no cause of action. Croke adds, that they held further, that although the defendant knew it to be no bezoar stone, it was not material; for every one, in selling off his wares, will affirm that his wares are good, or the horse which he sells is sound, yet if he warrants not them to be so, it is no cause of action; and the warranty ought to be made

Pettigrew *v.* Chellis.

at the time of the sale; wherefore, forasmuch as no warranty was alleged, they held the declaration to be ill. Dyer, however, in reporting the case, says the opinion of *Popham*, C. J., was, that if I have any commodities which are damaged, whether victuals or otherwise, and I, knowing them to be so, sell them for good, and affirm them to be so, an action upon the case lies for the deceit; but, although they be damaged, if I, knowing not that, affirm them to be good, still no action lies, without I warrant them to be good. *Andrews* v. *Boughey*, 1 Dyer 75, a, in margin.

The distinction thus so long ago indicated by *Popham*, C. J., seems well established by numerous cases, and the doctrine is well established, that where property is sold with a warranty, it is not necessary to aver a *scienter*, or if averred, it need not be proved; but where there is no warranty, the *scienter* is material, and must be both averred and proved. *Williamson* v. *Allison*, 2 East 446, where *Lawrence*, J., refers to ———— v. *Purchase*, at Guildhall, 6 Geo. II, before Lord *Raymond*, C. J., as supporting the same doctrine.

In *Springwell* v. *Allen*, Alleyn 91, more fully reported in note to 2 East 449, which was an action on the case for deceit in selling a horse as the defendant's own, when it was in truth the horse of A. B., upon not guilty pleaded, it appeared that the defendant bought the horse in Smithfield, but did not take care to have him legally tolled. Yet, as the plaintiff could not prove that the defendant knew it to be the horse of A. B., the plaintiff was nonsuited; the court holding that the *scienter* or fraud was the gist of the action where there was no warranty; but where there is warranty, the party takes upon himself the knowledge of the title of the horse and of his qualities.

So, if a man sell six blank lottery tickets, and afterward another, as owner of these tickets, recover them of the vendee, unless the vendor knew them to be the prop-

erty of another, or warranted them, neither this action—case for deceit—nor assumpsit for money had and received, will lie.   Per *Holt*, C. J., in *Paget* v. *Wilkinson*, cited in note to 2 East 449.

Although the more general and better opinion in this country undoubtedly is, that the seller of a chattel, if in possession, warrants by implication the title to it, contrary to what would seem to have been the impression of the court in some of the cases just cited, this does not, we apprehend, change the rule as to the requisite averments in a declaration, and the proofs necessary to sustain an action for deceit, where no such warranty exists, or in respect to matters not covered by it where it does exist. The subject of the warranty of the title of chattels in possession by the vendor is discussed in 1 Parsons on Contracts 457, 458, and the American authorities collected in note to page 458.

In the present case, the gist of the action being the alleged false and fraudulent representation in the course of negotiations as an inducement to the contract, it was necessary for the plaintiff to aver and prove that the defendant knew the representation to be false when he made it, and this proof was not established by showing that after the negotiations were concluded, and had been consummated and merged in a written contract without warranty, the defendant ascertained it to be false, and neglected to communicate this information to the plaintiff.

The instructions requested were, therefore, properly refused, while those given were sufficiently favorable to the plaintiff.   There must, then, be

*Judgment upon the verdict.*