Hillsborough, ⎱
  May 7, 1907. ⎰

### SIPOLA *v.* WINSHIP.

One who has been induced to purchase real estate by fraudulent representations as to the extent and value of the land is not entitled to a rescission of the contract when that relief would be inequitable because of great deterioration in the property,..due to fault on his part after discovery of the fraud, and because of his delay in instituting suit.

In such case the court may decree a cancellation of a promissory note given by the plaintiff for the purchase price, to the extent of the damage he has suffered by reason of the defendant's fraud, if under all the circumstances equity and good conscience so require; and it is no objection to the granting of such relief that the parties will thereby be deprived of a trial by jury.

Statements by the owner of a farm as to the area of the tillage land therein, made with knowledge of their falsity, designed to induce a purchase, and relied upon by the vendee, are fraudulent representations which entitle the latter to relief.

A prospective purchaser of land, who is ignorant of the extent of an acre as it appears upon the ground, may be justified in relying upon the representations of the owner as to the number of acres in the tract.

BILL IN EQUITY, for the rescission of a sale of real estate on account of fraud, etc. Trial by the court. Bill dismissed without prejudice. Transferred from the January term, 1906, of the superior court by *Peaslee*, J.

The plaintiff purchased a farm of the defendant in 1904, for the price of $2,500, of which he paid one half in cash and gave his note secured by a mortgage of the farm for the balance, payable in annual instalments of $100 each. The first instalment having become due and its payment being refused by the plaintiff, the defendant brought a writ of entry to foreclose the mortgage, which action is pending. The bill alleges fraudulent misrepresentation as to the quantity of wood and timber on the farm and as to the extent of the tillage land, and the plaintiff's reliance upon the representations. The prayers of the bill are for a stay of the action at law during the pendency of this suit, for an injunction restraining the defendant from assigning the note and mortgage or any interest therein, for a decree rescinding the contract of sale or cancelling the note and mortgage and enjoining the further prosecution of the writ of entry, for a decree for the damages to which the plaintiff is entitled in equity, and for such other relief as may be just. The defendant's answer, besides denying the fraud and demurring to the bill on the ground that the plaintiff had a plain

and adequate remedy at law, alleges that the statements complained of were mere expressions of opinion, and were so understood by the plaintiff, who carefully examined the premises and had equal opportunity with the defendant to make accurate estimates upon those matters. The defendant alleges, in an amended answer, that the property conveyed to the plaintiff included stock and farming utensils which the plaintiff had used, worn out, and disposed of, and that he had carried on the farm in an unhusbandlike manner and consumed the crops.

The plaintiff bought the farm relying upon the defendant's assertions and offers to warrant that the wood and timber on the farm were worth $1,000. They were not worth over $600, and this the defendant knew. The plaintiff's damages on account of this fraud are $400. The defendant also represented that there were forty-five acres of tillage land, when there were in fact only eighteen acres, and the defendant well knew there were much less than forty acres. The plaintiff examined the tillage fully and had every opportunity to judge of its extent, but he had no definite idea of the extent of an acre of land. He saw and understood what land was included in the tillage sold to him. He relied upon the statement in the defendant's advertisement, that there were forty-five acres of tillage, and upon the oral assurances of both the defendant and his agent that there were forty or forty-five acres, and honestly believed that the area was as represented. The defendant intended that the plaintiff should rely upon the representations. It was found from these facts that the charges of fraud relating to the extent of the tillage were not established; and this finding was based upon the ruling that, upon the facts found, the plaintiff is not entitled, as a matter of law, to rescission or damages upon that ground. To this ruling the plaintiff excepted.

After discovering the fraud as to the wood and timber, the plaintiff continued to occupy the farm and so mismanaged that it has greatly deteriorated in value. His acts and his delay in bringing this suit were such as to make a decree of rescission inequitable. The bill was dismissed without prejudice, upon the ground that, as the case for equitable relief failed, the court has no jurisdiction to retain the bill for the assessment of damages caused by fraud. To this ruling the plaintiff excepted.

The plaintiff also excepted severally to the denial of these motions: That the defendant be enjoined from further prosecuting his action for a foreclosure of the mortgage, and be ordered to indorse $100 upon the note as of its date and to pay the plaintiff the balance of the $400 damages above mentioned and his costs; that the

defendant be ordered to indorse $400 upon the note as of its date and not prosecute his action further, and to pay costs; and that the plaintiff have leave to amend by substituting for the bill in equity a declaration in case for deceit, and thereupon have judgment for $400 and costs. The motions were denied, because to grant them would deprive the defendant of his right to a jury trial.

*Sargent, Remick & Niles,* for the plaintiff.

*George B. French,* for the defendant.

CHASE, J.   The plaintiff seeks equitable relief for the defendant's fraud in making the sale of the farm to him, either by a rescission of the contract of sale, or by a cancellation of the note and mortgage which he gave in part payment for the farm, and which the defendant now holds and is attempting to enforce by an action at law.   It appears that, in making the contract of sale, the defendant defrauded the plaintiff to the extent of $400 by false and fraudulent representations regarding the value of the wood and timber upon the farm.   The effect of this fraud was substantial; and if the plaintiff, as soon as he discovered the fraud, had taken steps to have the contract of sale rescinded, and was able and willing to restore the defendant to his situation before the contract, no reason is perceived why the plaintiff would not be entitled to rescission.   But the defendant in his amended answer set up, as a defence to the plaintiff's claim of rescission, the plaintiff's acts in consuming and disposing of portions of the property included in the sale and in carrying on the farm in an unhusbandlike manner.   In other words, the defendant alleged that the plaintiff was not entitled to a rescission of the contract because by his own faulty acts he had disabled himself from restoring the defendant to his original situation.   It was found by the superior court that, after discovering the fraud, the plaintiff continued to occupy the farm and so mismanaged that it greatly deteriorated in value; and, further, that the plaintiff's acts and his delay in bringing this suit were such as to make a decree of rescission inequitable. No question was transferred relating to the correctness of these findings.   Consequently, they must be regarded as adequately supported by the evidence that was submitted to the court.   The question of law then is, whether a party is entitled to rescission of a contract when rescission would be inequitable because of great deterioration in the property to be returned by the plaintiff, arising from fault on his part after discovering the fraud, and because of

his delay in instituting a suit for obtaining rescission.  The statement of the question unerringly suggests the answer.

It is true that there are cases in which rescission has been decreed when the plaintiff had disabled himself from restoring the property received under the contract in the condition it was in when received; but in such cases it was practicable to shape the decree so as to do equity between the parties.  *Thackrah* v. *Haas*, 119 U. S. 499.  There is nothing in the record showing that it was practicable to make such a decree in this case.  It might be inequitable to require the defendant to take the farm back, greatly deteriorated in value, even in connection with the payment of a sum of money to compensate him for the deterioration, or to take it back after so long a delay. . As the case stands, it appears that a rescission, absolute or conditional, cannot be made that will be equitable between the parties.  Such being the fact, law or equity does not entitle the plaintiff to rescission.  Equity will not order that to be done which in and of itself is inequitable.

The cancellation which the plaintiff seeks is not cancellation to effect rescission, but cancellation notwithstanding the contract of sale stands.  His position in substance is, that the note which the defendant received under the contract of sale, and which he now holds and is attempting to collect, is without consideration in whole or in part because of the defendant's fraud; and that equitable considerations require that the defendant should not be allowed to retain the note and accompanying mortgage as valid, subsisting claims against the plaintiff and the farm.  Story, in discussing the subject of the cancellation of instruments independently of discovery or other equitable relief, says: "Whatever may have been the doubts or difficulties formerly entertained upon this subject, they seem by the more modern decisions to be fairly put at rest, and the jurisdiction is now maintained in the fullest extent.  And these decisions are founded on the true principles of equity jurisprudence, which is not merely remedial, but is also preventive of injustice.  If an instrument ought not to be used or enforced, it is against conscience for the party holding it to retain it, since he can only retain it for some sinister purpose.  If it is a negotiable instrument, it may be used for a fraudulent or improper purpose, to the injury of a third person."  1 Sto. Eq. Jur. (13th ed.), s. 700.  In *Hamilton* v. *Cummings*, 1 Johns. Ch. 517, Chancellor *Kent* reviews the early common-law authorities upon the subject, and concludes that "the weight of authority and the reason of the thing are equally in favor of the jurisdiction of the court, whether the instrument is or is not void at law, and whether it be void from matter appearing on its face, or from proof taken in the cause, and that these assumed distinctions are

not well founded." He says further (*p.* 523): "But while I assert the authority of the court to sustain such bills, I am not to be understood as encouraging applications where the fitness of the exercise of the power of the court is not pretty strongly displayed. Perhaps the cases may all be reconciled on the general principle that the exercise of this power is to be regulated by sound discretion, as the circumstances of the individual case may dictate; and that the resort to equity, to be sustained, must be expedient, either because the instrument is liable to abuse from its negotiable nature, or because the defence, not arising on its face, may be difficult or uncertain at law, or from some other special circumstances peculiar to the case and rendering a resort here highly proper and clear of all suspicion of any design to promote expense and litigation." See *Downing* v. *Wherrin,* 19 N. H. 9, 91, 92. " The application for this species of relief is by a bill *quia timet,* and is addressed to the sound discretion of the chancellor upon the circumstances of the particular case; and the relief will ordinarily be afforded where injury may reasonably be apprehended, and it is made to appear that the retaining of the title or claim is clearly against conscience." *Bellows,* J., in *Tucker* v. *Kenniston,* 47 N. H. 267, 270. It was held in *Strafford* v. *Welch,* 59 N. H. 46, that a bill in equity might be maintained for the surrender and cancellation of an overdue note, payment of which had been tendered to and refused by the holder. See, also, *Brooks* v. *Howison,* 63 N. H. 382, 389.

The case under consideration resembles, in some particulars, the case of *Montgomery* v. *McLaury,* 143 Cal. 83. In that case, the contract into which the fraud entered was for an exchange of farms, and included a note and mortgage given by the plaintiff to the defendant for the difference in the values placed upon the farms. There was controversy between the parties relating to the interpretation of the pleadings—whether the plaintiff's case was for a rescission of the contract, or for an affirmance of it and for the damages resulting from the alleged fraud; but it seems that there, as here, pleadings are construed liberally, and although the plaintiff evidently intended to state facts entitling him to a rescission, and also facts entitling him to a cancellation of the mortgage and to damages, for both of which he prayed, it was held that the portions of the complaint relating to rescission should be treated as surplusage, after the facts had been found showing that rescission was impossible because of the defendant's acts. So far as can be judged from the case in hand, the plaintiff's bill is not subject to the criticism made of the pleadings in that case. The material facts appear to have been set forth in the bill, and the prayers are for a rescission of the contract or for a cancellation of

the note and mortgage. No objection was made to the form of the bill, and it is not apparent that any reasonable objection could be made under the practice in vogue in this state. There is no such inconsistency between the two kinds of relief sought as would be likely to lead to confusion or uncertainty on the trial. If rescission is denied, the contract necessarily stands; and the only remedies left to the plaintiff must be based on the theory of an affirmance of the contract. This does not disable him from maintaining that his outstanding promissory note is voidable in whole or in part for want of consideration, and ought to be cancelled. The alleged fraud is ground for this relief, the same as for rescission. It was held in the California case that the note and mortgage should be cancelled; and this not affording the plaintiff adequate relief, that he should be awarded a sum equal to the additional damage he had suffered from the defendant's fraud, on the ground that equity jurisdiction having attached for one purpose, complete relief would be afforded. *Hosleton* v. *Dickinson*, 51 Ia. 244, is also a case much in point.

It appears from these authorities that, under certain circumstances, the court would have jurisdiction to cancel the plaintiff's note held by the defendant, to the extent that it represents the results of the defendant's fraud. The plaintiff moved, in effect, that the note be cancelled to the extent of $400 of its principal, by reason of the defendant's fraud relating to the wood and timber, that sum being the damage assessed by the court for the fraud. This motion was denied, for the specific reason that to grant it would deprive the defendant of his right to a trial by jury. But the court having jurisdiction to cancel the note in whole or in part, it was necessary, in exercising the jurisdiction, to determine the extent to which the note should be cancelled, or, which is the same thing, the extent of the plaintiff's damages. This the court might do directly, or by the agency of a master or a jury, in accordance with the usual equity practice. While the court may properly employ a jury to instruct his conscience regarding such questions (*Tasker* v. *Lord*, 64 N. H. 279), the parties have not a right under the constitution to a trial of them by a jury. *State* v. *Saunders*, 66 N. H. 39; *Curtice* v. *Dixon*, 73 N. H. 393. The specific reason given for the denial of the plaintiff's motion indicates that the court did not consider the circumstances with a view of determining the question whether they called for a decree cancelling the note in whole or in part. As has been seen, the power which a court of equity has in such cases "should be regulated by sound discretion as the circumstances of the individual case may dictate." If the note is not negotiable and the plaintiff's defence against it growing out of the defendant's fraud

will not be endangered or rendered unreasonably difficult,—in short, if there is no good reason why equity should interfere in the premises,—a decree of cancellation should be denied and the plaintiff should be left to make his defence in the action at law. If, on the other hand, the note is negotiable, and the plaintiff is liable to be put at a disadvantage in making a defence to it in the action at law,—if equity and good conscience require that it should be cancelled in whole or in part,—then the plaintiff should have a decree accordingly. The result is that the plaintiff's exception to the denial of the motion under consideration is sustained, provided it is found that under the circumstances of the case the note should be cancelled in whole or in part. Or, stating it in another form, the plaintiff's exception is sustained in case it is found that there is ground for granting equitable relief by a cancellation of the note in whole or in part.

Another exception of the plaintiff is to the court's ruling in regard to the defendant's representations relating to the area of the tillage land. The defendant, by advertisement, represented the area of this land to be forty-five acres, and by oral statements of himself and his agent, he represented it to be forty or forty-five acres. He well knew it was much less than forty acres. It was in fact only eighteen acres. The defendant intended that the plaintiff should rely upon these representations; and the plaintiff did so in fact, honestly believing them to be true. The plaintiff saw and fully examined the tillage land, understanding what was included in that designation, but he had no definite idea of the extent of an acre. The court ruled, in substance, that upon these facts the plaintiff is not entitled, as a matter of law, to a rescission of the contract or to damages. It would seem from the language of the case that the representations purported, and were understood, to be statements of the defendant's knowledge—not statements of his opinion or judgment regarding the matter. This inference is strengthened when it is considered that the answer specifically alleged that the statements were mere expressions of opinion, etc. If such had been the finding, one would naturally expect it would be definitely stated in the case. Whether the statements related to the defendant's knowledge, or to his opinion, is a question of fact; and, as the case is understood, it was found that they related to his knowledge. It is therefore unnecessary to consider what would be their legal effect if they were mere expressions of opinion. That, undoubtedly, would depend somewhat upon the circumstances under which they were made and the plaintiff's conduct in view of them. It is conceivable that mere expressions of opinion might be made in such manner and under such circumstances as that they would naturally throw a man off

his guard and induce action in reliance upon them, without rais-
ing an implication of want of care on his part. But questions of
this kind can be more satisfactorily determined when presented in
a concrete form. In this case, the defendant stated as a fact what
he knew was false; and he did it with the fraudulent intent of
deceiving the plaintiff and thereby inducing him to purchase the
farm. This was fraud. *Shackett* v. *Bickford, ante,* 57. The de-
fendant attempts to avoid responsibility for this fraud by invoking
the maxim *caveat emptor.* He says that, as the plaintiff saw and
examined the land and had an opportunity to ascertain its area, he
was in fault for relying upon the defendant's statements regarding
that matter. In *Pringle* v. *Samuel,* 1 Littell 44, the court say:
"We do not remember any case where the maxim quoted [*caveat
emptor*] has been used by the chancellor in such manner as to com-
pel him to shut his ears against false representations, or to give
latitude to a vendor of real estate to state facts untruly, without
any responsibility." The case was a bill in equity praying for a
perpetual injunction to restrain the defendant from enforcing a
judgment recovered against the plaintiff upon a promissory note
given in part payment for a farm. In the negotiation for the sale
of the farm the defendant falsely and fraudulently represented
that it contained fifty acres, when it contained only thirty-seven
and a half acres; and the court held that the plaintiff was entitled
to a perpetual injunction against the collection of a part of the
judgment corresponding in amount with the deficiency in the land.
In *Stewart* v. *Stearns,* 63 N. H. 99, 106, the court of this state, in
speaking of this maxim, say: "Where the statements are of
material facts, essentially connected with the substance of the
transaction, and not mere general commendations or expressions of
opinion, and are concerning matters which from their nature or
situation are peculiarly within the knowledge of the vendor, the
purchaser is justified in relying on them; and in the absence of
any knowledge of his own, or of any facts which would excite sus-
picion, he is not bound to make inquiries and examine for him-
self. Under such circumstances, it does not lie in the mouth of
the vendor to complain that the vendee took him at his word."
*Coon* v. *Atwell,* 46 N. H. 510, was an action on the case for deceit,
by which the plaintiff was induced to purchase a farm of the
defendant. The deceit alleged in one count of the declaration was
a representation that the farm contained 250 acres of land, when
in fact it contained only 175 acres, which the defendant well knew.
In support of a demurrer to the declaration, it was urged by the
defendant that the representations set forth in the declaration
were mere expressions of opinion not amounting to a warranty,
and that with common prudence the truth might have been ascer-

tained. It was held that this count stated a good cause of action, and that the demurrer was properly overruled. In the course of the opinion the court said: "In each of these counts there is alleged a false affirmation, known by the defendant to be false, and in relation to a material matter, and by which the plaintiffs were deceived and injured, and in such a case an action lies." The law on the subject has been similarly decided in other states. *Twitchell* v. *Bridge*, 42 Vt. 68 (a case much like the present case); *Stevens* v. *Giddings*, 45 Conn. 507; *Thomas* v. *Beebe*, 25 N. Y. 244; *Stark-weather* v. *Benjamin*, 32 Mich. 305; *McGhee* v. *Bell*, 170 Mo. 121. See other authorities cited in 29 Am. & Eng. Enc. Law (2d ed.) 629. The law seems to have been held differently in the earlier decisions in Massachusetts (*Gordon* v. *Parmelee*, 2 Allen 212; *Noble* v. *Goggins*, 99 Mass. 231; *Parker* v. *Moulton*, 114 Mass. 99); but in the later decisions the court have declined to extend the rule of the earlier cases, and have held in substantial accord with the law as held by the courts of other states. *Lewis* v. *Jewell*, 151 Mass. 345; *Roberts* v. *French*, 153 Mass. 60,—two cases much in point.

Upon authority, as well as upon reason, it cannot be held as matter of law that the plaintiff was not in the exercise of common prudence in relying upon the defendant's representations in this case. Being ignorant of the extent of an acre as it appears upon the ground, he was obliged to obtain information as to the area of the tillage land from others. The maxim *caveat emptor* did not prohibit him from seeking it of the defendant. The law of the present day does not assume in all cases that vendors of property are endeavoring to defraud the vendees by false and fraudulent representations, and consequently require vendees to distrust such representations and seek the information elsewhere, or suffer the consequences. If the representations, as it seems was the fact in this case, purport to be statements of facts within the vendor's knowledge, and there is nothing in the surrounding circumstances to put the vendee upon guard in relation to them, considerations of justice and public policy alike will uphold the vendee in relying upon the representations. As has been said in some of the cases cited, a contrary course would have a tendency to promote and protect fraudulent dealing on the part of vendors. Vendors certainly have no valid reason for complaining that they are held responsible for their fraudulent representations, nor for criticising their vendees for relying upon them. Of course, cases between vendors and vendees must each stand upon the facts peculiar to itself. It may appear in a case that the vendee was imprudent in relying upon the vendor's statements. If so, the maxim applies; but if, as a matter of fact, the statements are of material facts

essentially connected with the substance of the transaction, and are not mere general commendations or expressions of opinion, and if the facts stated are such as might be known to the vendor, the vendee may safely rely upon them, unless there are circumstances attending the statements having a tendency to put him upon further inquiry regarding them. It does not appear that there was anything in this case having a tendency to cause the plaintiff to distrust the defendant's statements. The plaintiff's ignorance of the extent of an acre is no justification or answer to the defendant's fraud in knowingly and intentionally deceiving him as to the quantity of land, especially since he must have known of the plaintiff's ignorance and intentionally availed himself of it to deceive the plaintiff. Although the fraud thus committed may not entitle the plaintiff to a rescission of the contract of sale, because rescission would be inequitable under the circumstances, it should be taken into consideration on the question of the cancellation of the note and mortgage, in case it turns out that equity requires cancellation. If the court's finding as to the plaintiff's mismanagement of the farm and delay in bringing this suit does not apply to the question of rescission of the contract of sale for this fraud, the plaintiff may be entitled to rescission, notwithstanding he would not be entitled to it on account of the fraud relating to the wood and timber. This would depend upon facts that do not appear in the case. The plaintiff's exception to the ruling that the facts found do not constitute fraud for which there may be rescission or cancellation is sustained *de bene esse*.

As the decision of the foregoing questions is likely to result in the disposal of the case, the question whether the plaintiff would be entitled to a decree for the damages he has suffered from the defendant's fraud, without other relief of a distinctively equitable nature, and the question whether, if the action were amended by substituting for the bill a declaration in case for deceit, the defendant would be entitled to a jury trial, have not been considered.

*Case discharged.*

All concurred.