Rockingham, Feb. 1, 1944. } No. 3454.

SAMUEL AND NATHAN GOLDSTEIN, INC. *v.* E. PAUL GILMAN.

*George R. Scammon* and *George D. Varney* (*Mr. Scammon* orally), for the plaintiff.

*Hughes & Burns, Tilton & Sawyer* (of Massachusetts) and *Walter A. Calderwood* (*Mr. Calderwood* orally), for the defendant.

BRANCH, J.   On February 10, 1925, Edith L. Gilman, the defendant's mother, leased to the plaintiff the lot of land in question known as Lot No. 3, Block B, on plan of Hampton Beach Improvement Company which she had acquired by lease from said Hampton Beach Improvement Company, dated March 27, 1903, having final expiration date, after renewals, of April 1, 1943.   The consideration of said lease was the sum of $5,250 paid upon the execution thereof and the further sum of $30 per year, being the amount of rental due annually from Edith L. Gilman to the Hampton Beach Improvement Company.

The lease was given in settlement of a suit at law which had arisen between Mrs. Gilman and another corporation known as Goldstein Bros. Amusement Co. which held a lease of the premises for 10 years from March 15, 1915, in which it was provided as follows: "It is understood and agreed between the parties hereto that the party of the second part shall have the privilege of buying from the party of the first part her said lease from the Hampton Beach Improvement Company for the sum of Six Thousand ($6,000.00) Dollars at any time within the ten years term of this lease."

The bill alleges that the said Edith L. Gilman represented to the plaintiff that under her lease dated March 27, 1903, "she was the owner of a leasehold interest for the term of 25 years, expiring April 1, 1928, which lease she had the privilege of renewing at the expiration thereof for the term of fifteen (15) years and no more."

Thereafter, at the April, 1927, term of the Superior Court for the County of Rockingham, Edith L. Gilman filed a petition against the Hampton Beach Improvement Company alleging that, by the terms of the lease of March 27, 1903, she had the privilege of renewing said lease for another 25 years with the further privilege of an extension of 15 years in addition, and prayed that the defendant be ordered and directed to renew said lease for a term of 25 years and for 15 years additional.   At the April, 1929, term of the Superior Court this petition was heard and an order was made as follows: "It is ordered, adjudged and decreed that the lease made by the said defendant to the said plaintiff is hereby reformed so that the renewal clause in said lease shall read as follows: 'The said lessee shall have the right of renewal of said lease for the term of 40 years in addition to the original term of 25 years.'"   The effect of this order was to extend the leasehold interest of Edith L. Gilman to April 1, 1968, instead of April 1, 1943.

The bill alleges that "by the agreement of the 10th of February,

1925, the petitioner did purchase the entire leasehold interest of the said Edith L. Gilman" and therefore prays "that it be adjudged, ordered and decreed that Samuel and Nathan Goldstein, Inc. is the owner of the leasehold interest of Edith L. Gilman in and unto Lot No. 3, Block B, on plan of Hampton Beach Improvement Company . . . as acquired by said Edith L. Gilman by lease and judicial decree."

It thus appears that the plaintiff seeks to secure the benefit of the 25 years additional extension procured by Mrs. Gilman as a result of the order above quoted.

The defendant E. Paul Gilman, is the son, executor and devisee of Edith L. Gilman, who died upon June 27, 1938. The bill alleges that "He claims that he is the owner of a leasehold interest of said premises from the first day of April, 1943, to the first day of April, 1968 and has attempted to exercise ownership thereof by requesting that the Hampton Beach Improvement Company issue to him a lease of the premises from the first day of April, 1943 to the first day of April, 1968." The original petition herein was brought nominally against Edith L. Gilman, then deceased, but an injunction was sought against E. Paul Gilman to restrain him "from interfering with or otherwise impairing the ownership of said leasehold interest by said Samuel and Nathan E. Goldstein, Inc." Although the order of notice issued by the clerk called for service only upon Edith L. Gilman, then deceased, personal service was in fact made upon E. Paul Gilman in Phoenix, Arizona, and he was present in court at the hearing. Some question having arisen at the trial as to whether E. Paul Gilman was defendant in his capacity as executor or individually, the Court ruled that "E. Paul Gilman is a party defendant in this action in his individual capacity." This ruling appears to have been correct and the exception of E. Paul Gilman thereto is accordingly overruled.

The plaintiff bases its claim upon the theory of a constructive trust. The argument is that the plaintiff, upon February 10, 1925, was led to believe and did believe that it was purchasing the entire leasehold interest of Mrs. Gilman in the lot in question, that "Mrs. Gilman fradulently concealed the fact that she had a long term lease" and consequently held the additional term of 25 years which she secured by means of the court order above quoted, upon a constructive trust for the plaintiff.

The plaintiff was met at the outset of the trial by the claim that its rights were fixed by the lease of February 10, 1925, and that any

evidence of a different understanding or of the contemporary negotiations of the parties was immaterial and inadmissible under the parol evidence rule. This contention, which was restated and reargued, in season and out of season, by counsel for the defendant, was properly overruled by the Court. The parol evidence rule interposes no obstacle to the establishment of claims of extrinsic fraud. Wig. Ev. (3d *ed.*), *s.* 2439.

The plaintiff relied principally for proof of its claims upon the testimony of the witness Essex S. Abbott, who acted as Mrs. Gilman's attorney in this transaction. The defendant objected strenuously to his testimony upon the ground that he was not shown to have had authority to make representations on Mrs. Gilman's behalf. These objections were properly overruled. The evidence and the correspondence do not admit of any doubt as to Mr. Abbott's authority to make such representations as he did make. Particularly significant is the testimony of E. Paul Gilman as follows: "Q. You remember that you and your mother discussed the suit that had been brought against her by the Goldsteins in an effort to require her to sell her lease for $6,000? A. Yes, and I think, Abbott fixed that all up. Abbott did all the business with her."

Mr. Abbott testified that Mrs. Gilman told him that she was willing to sell her entire leasehold interest for $6,000 and that he so informed the plaintiffs. It is perfectly apparent, however, that Mr. Abbott understood and the plaintiff understood that the entire leasehold rights of Mrs. Gilman expired upon April 1, 1943. Upon the face of the lease which Mrs. Gilman then held, this was the limit of her leasehold rights, and any thought that she may have had some rights in excess of those set forth in the lease apparently never entered the heads of the parties at all. There is nothing in the testimony of Mr. Abbott or any other witness which lends support to the claim that Mrs. Gilman fraudulently concealed the fact that there were circumstances in existence which entitled her to a reformation of the lease from the Hampton Beach Improvement Company. There is nothing to indicate that on February 10, 1925, she had any suspicion that such facts existed. Her petition which resulted in the order for reformation was not filed for more than two years after the lease of February 10, 1925 was executed, and the order thereon was not made until 1929. No explanatory evidence was introduced, and it cannot be determined from the record upon what grounds the order for reformation was based. There is nothing, therefore, in the record to charge Mrs. Gilman with knowledge upon February 10,

1925, that she had greater rights in the premises than those which she conveyed to the plaintiff, and, *a fortiori*, nothing to charge her with fraudulent concealment of the fact that she had such rights.

The $5,250 which the plaintiff paid for its new lease was agreed by all to be a fair price for the term extending to April 1, 1943. It would clearly be inequitable to allow the plaintiffs to secure an additional term of 25 years without compensation. The testimony of Mr. Abbott upon this point is very suggestive. "Q. Had you known, Mr. Abbott, that she had rights under that lease which took her up to 1968 or 25 years beyond April 1, 1943, would you have recommended to her that she sell that interest for $5,250? A. No, I would recommend she settle the case and get rid of them."

. That this vital point was not obscured at the trial is indicated by the following colloquy: "*Court:* Did Mrs. Gilman know then she had the right to have it extended 25 years beyond 1943? *Mr. Varney:* If she did she did not say anything about it. *Court:* I am wondering if she knew it. *Mr. Burns:* Just the point, Your Honor." Since there was no evidence to charge Mrs. Gilman with fraudulent concealment of the extent of her interest, the order dismissing the bill was proper.

*Exceptions overruled.*

All concurred.