Belknap
No. 7180

LOUIS A. BERGERON

v.

LAWRENCE J. DUPONT, JR., & a.

June 30, 1976

*Decker & Hemeon* and *Philip T. McLaughlin (Mr. McLaughlin* orally) for the plaintiff.

*Ramsey & Norberg* and *Carroll R. Hunter (Mr. Hunter* orally) for the defendants.

GRIFFITH, J. The plaintiff purchased a mobile home park in Belmont from the defendants. Subsequent to the transfer of title, plaintiff brought this action to recover damages allegedly sustained as a result of fraudulent misrepresentations by the defendant Lawrence J. Dupont, Jr., through his agent. Trial was held before a Master *(Charles T. Gallagher,* Esq.) who recommended a verdict for the plaintiff in the amount of $4,894.25. The Trial Court *(Perkins,* J.) approved the master's report and reserved and transferred the defendants' exceptions.

On January 25, 1973, the plaintiff and defendant executed a purchase and sale agreement, which specified a sales price of $89,000.00. In the course of negotiations leading to the signing of the agreement, the defendant's agent represented to the plaintiff

that the septic systems in the park were in satisfactory condition, requiring only an occasional pumping out for proper functioning.

Subsequent to the signing of the agreement but prior to the closing, complaints were lodged in February of 1973 by park tenants with the water supply and pollution control commission to the effect that effluent from some of the systems was emerging above ground. Tests by the State in February were inconclusive because of weather conditions but on March 13 and March 14, tests disclosed that three of the systems had failed. The defendant Dupont was informed by a sanitary engineer from Concord sometime during this period that they were testing the systems because of emergence of effluent.

The title was transferred on March 14, 1973, and shortly thereafter the plaintiff was informed that three of the septic systems had failed. The plaintiff replaced them and the cost of replacement was the basis of the master's recommended verdict.

The master found on the issue of defendant's fraud as follows: "At no time did the defendant reveal to the plaintiff that the state was investigating a complaint from the tenants. The defendant's representations to the plaintiff regarding the condition of the septic systems were a material factor in persuading the plaintiff to buy the mobile home park. When the defendant acquired new knowledge regarding the condition of the septic systems by reason of the state's investigation in February 1973, he came under the duty to disclose this additional information to the plaintiff since it was at variance with the representations previously made."

The master correctly ruled that a representation which was true when made could be fraudulent if the maker failed to disclose subsequent information which made the original representation false. *Maxwell Ice Co. v. Company,* 80 N.H. 236, 239, 116 A. 34, 36 (1921); *St. Joseph Hosp. v. Corbetta Construction,* 21 Ill. App. 3d 925, 953-54, 316 N.E.2d 51, 72 (1974); 1 F. Harper & F. James, Law of Torts § 7.14, at 589 (1956); W. Prosser, Law of Torts § 106 (4th ed. 1971). While it is true that one who makes a representation believing it to be true and does not discover its falsity until after the transaction has been consummated has committed no fraud, both parties herein treat March 14, 1973, the date of closing, as the time at which the rights of the parties became fixed. Accordingly, for purposes of this case, we do not reach the question of whether there is a duty to correct representations which are not discovered to be false until after the signing of a specifically enforceable contract of purchase and sale. *See Pettigrew v. Chellis,*

41 N.H. 95 (1860).

The defendant does not dispute the above-stated principle of law, but argues instead (1) that the plaintiff, being an experienced real estate broker himself, was not entitled to rely on representations made by the defendant's agent, but was required to make his own investigation; (2) that the plaintiff's failure to investigate amounts to contributory negligence which bars his recovery in this case; (3) that because the results of the February 14 tests were inconclusive, the defendant did not acquire any new factual information and thus had nothing material to disclose; and (4) that due to a standard merger clause contained in the sales agreement, the parol evidence rule precludes the plaintiff from raising seller's misrepresentation as to the septic systems, which are not expressly mentioned in the agreement.

The first two arguments, that the plaintiff's expert status imposed upon him a duty to investigate and that his failure to do so rendered him contributorily negligent, are refuted by evidence in the record which indicates that winter weather conditions made an inspection by the plaintiff impossible, and that in any case, the defendant requested that the plaintiff curtail inspection so as not to alarm park tenants. See Coffin v. Dodge, 146 Me. 3, 6, 76 A.2d 541, 543 (1950); Schmidt v. Landfield, 20 Ill. 2d 89, 94, 169 N.E.2d 229, 232 (1960). This situation falls instead within the rule that where a seller makes material statements of fact concerning matters peculiarly within his own knowledge the purchaser is justified in relying on them. Sipola v. Winship, 74 N.H. 240, 247, 66 A. 962, 966 (1907); Coon v. Atwell, 46 N.H. 510, 512 (1866).

Similarly without merit is the defendant's contention that the commission's investigations produced no new material information. The defendant himself testified that after the February 14 tests, the commission engineer told him that the installation of new systems might be necessary. Where defendant's agent had previously represented to the plaintiff that the systems were in satisfactory condition, the subsequently acquired, directly contradictory, information is clearly material. See Shane v. Hoffman, 227 Pa. Super. 176, 182-83, 324 A.2d 532, 536 (1974).

As to the plaintiff's final argument, it is true that the parties' contract contained the usual clause that all representations were merged in the agreement and that neither party relied on statements not embodied in the agreement. However, whatever the effect of such a clause in a contract action (see Bonin v. Howard, 115 N.H. 86, 333 A.2d 450 (1975)) it interposes "no obstacle to

the establishment of claims of extrinsic fraud." *Goldstein v. Gilman,* 93 N.H. 106, 109, 36 A.2d 268, 270 (1944); *Lyman v. Kimball,* 82 N.H. 232, 233, 131 A. 690, 691 (1926); Restatement of Contracts § 238 (b) (1932).

*Exceptions overruled; judgment on the verdict.*

All concurred.