Hillsborough
No. 7941

ARTHUR BURSEY

v.

ROBERT CLEMENT & a.

May 31, 1978

*Mr. Victor W. Dahar*, of Manchester, by brief and orally, for the plaintiff.

*Prunier & Mazerolle*, of Nashua (*Gerald R. Prunier* orally), for the defendants.

DOUGLAS, J. This is a bill in equity to set aside the conveyance of real estate and rescind the underlying purchase and sale agreement. Trial before a Master (*Mayland H. Morse, Jr.*, Esquire) resulted in a decree for the defendants. *Flynn*, J., transferred the plaintiff's exception. We hold that under the facts before us, the defendants owed a duty to the plaintiff to inform him of the altered circumstances surrounding the transaction. Defendants' failure to perform that duty justifies rescission; consequently we reverse.

The plaintiff is a real estate developer. In October 1976, he was searching for a suitable tract in the southern part of the State. He approached a real estate dealer in Raymond, New Hampshire, Robert Clement, because Raymond had not enacted a "no-growth" ordinance. The defendant advised that he had an approved subdivision of 87 lots for sale, but that the approval would expire in early 1977. The plaintiff expressed interest and asked whether there was any "no-growth" legislation planned. The defendant replied that no such plans existed and that because he was the Raymond town clerk "he should

know." According to the testimony the plaintiff asked Clement to keep him advised of pending changes. The defendant's response to this request, if any, is not in the record.

After assurance from the Raymond building inspector that he could obtain 87 building permits for the development, the plaintiff met with all the defendants who had interests in the property. On November 1, they signed a purchase and sale agreement. Between that time and the closing, the Raymond planning board approved a moratorium, which severely restricted the issuance of building permits. Although the ordinance would not be effective until approved by the town meeting, its adoption by the board apparently limited the opportunity to obtain building permits to that which would exist under the ordinance.

Defendant Clement became aware of the new ordinance by reading a notice published in the local newspaper. He communicated that information to the other defendants. The plaintiff, who did not live in the area and had no access to the local newspaper, was not informed. While the closing was pending, the plaintiff spent $4,000–$5,000 in developing the land in order to obtain building permits. Immediately after the closing, he applied for the permits, but was told that under the new ordinance he could only have four rather than 87.

 We recently stated that in this State every agreement contains "an implied covenant that each of the parties will deal in good faith and deal fairly with the other." *Seaward Constr. Co. v. City of Rochester*, 118 N.H. 129, 130, 383 A.2d 707, 708 (1978), *citing Griswold v. Heat Inc.*, 108 N.H. 119, 124, 229 A.2d 183, 187 (1967). That obligation requires that if one party makes a representation of a material fact to another party for the purpose of inducing the other party to change his position or enter into a contract, the party making the representation must tell the truth. *McCarthy v. Barrows*, 118 N.H. 173, 384 A.2d 787 (1978); *Maxwell Ice Co. v. Brackett, Shaw & Lunt Co.*, 80 N.H. 236, 239, 116 A. 34, 36 (1921); *see Bergeron v. Dupont*, 116 N.H. 373, 374, 359 A.2d 627, 628 (1976). One who makes a representation that is true when made is under a duty to correct that statement if it becomes erroneous or is discovered to have been false before the transaction is consummated. *See McCarthy v. Barrows*, 118 N.H. at 175, 384 A.2d at 788; *Bergeron v. Dupont, supra* at 374, 359 A.2d at 628–29. The record is clear beyond peradventure that the plaintiff would not have signed the purchase and sale agreement unless he were assured that he could obtain 87 building

permits, enabling him to build on each of the subdivision lots he would purchase. Defendant Clement expressly represented that this was legally feasible. The record also reflects that the defendants were aware of the change in the ordinances and that the change affected the very essence of the transaction insofar as the plaintiff's purposes were concerned. The master's finding that none of the defendants were active participants in the adoption of the new ordinance is immaterial.

Nonetheless the defendants' attempt to escape the conclusion that they breached their duty of good-faith dealing by arguing that the plaintiff undertook his own investigation, thus not relying on Clement's representation. Our cases treat the buyer's competence and opportunity to investigate the truth of a material fact as a factor in ascertaining liability. *See McCarthy v. Barrows*, 118 N.H. at 175, 384 A.2d at 788; *Bergeron v. Dupont*, 116 N.H. at 375, 359 A.2d at 629. The plaintiff was as competent as the defendants to check on the availability of building permits and, in fact, did so. But the change in the representation concerning the number of lots available for building did not surface until after the plaintiff's investigation had been completed. The plaintiff relied on Clement to inform him of pending changes in the ordinance. Such reliance was justifiable. The plaintiff did not live in the area and did not receive the local papers. Clement was engaged in the real estate business, was the town clerk and did receive the Raymond paper. If anyone other than the selectmen and the building inspector would know of the ordinance, Clement would be a likely party. Clement knew that the plaintiff was relying on his trustworthiness. Although the defendants did not prevent Bursey from discovering the change in the ordinance for himself, they knew or should have known that that knowledge would not likely reach the plaintiff. Considering the defendants' vastly superior position to monitor the accuracy of their representation, we do not think that the plaintiff should be obligated to undertake repeated investigations during the pendency of the purchase and sale agreement.

The defendants also argue that because the rights of the parties were fixed by the purchase and sale agreement, the deal had been consummated, and thus this case is removed from the rule of *Bergeron*. In that case, however, we did not define the time at which a transaction would be consummated. We noted merely that the parties had agreed that their rights became "fixed" only at the closing. 116 N.H. at 374, 359 A.2d at 629. Although the meaning of "consummate" must vary according to the type of transaction involved,

in the classical transfer of real estate, consummation of the sale occurs when the conveyance of title is made and the purchase price is paid. *Cochran v. Ellsworth*, 126 Cal. App. 2d 429, 440, 272 P.2d 904, 911 (1954). In other words, the purchase and sale agreement must be wholly executed. Because the agreement in the instant case remains partially executory, "consummation" has not occurred; the time at which the parties' rights become "fixed" is immaterial.

■ Finally, the defendants contend that the plaintiff's remedy at law would be adequate and therefore rescission should not be granted. However, even if we were satisfied that damages would fully recompense the plaintiff, rescission is a basic remedy for actionable deception. D. Dobbs, Handbook on the Law of Remedies § 9.4, at 618 (1973).

*Exception sustained.*

All concurred.