Frechette v. Wal-Mart Stores          CV-94-430-JD  09/26/95 P

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Joyce A. Frechette

    v.                                    Civil No. 94-430-JD

Wal-Mart Stores, Inc.


O R D E R


The plaintiff, Joyce Frechette, has brought this diversity action against the defendant, Wal-Mart Stores, Inc., alleging state law claims of wrongful termination (count I), breach of contract (count II), and intentional infliction of emotional distress (count III).  Before the court are the defendant's motion for summary judgment (document no. 23) on the wrongful termination and contract claims, and the plaintiff's motion for reconsideration (document no. 35) of the court's order of August 29, 1995, dismissing count III of the complaint.


Background[1]

In June 1991, Joyce Frechette was hired to manage the shoe department of the defendant's department store in Hooksett, New Hampshire.  A provision on the back of Frechette's employment

---

[1]The court's recitation of the facts relevant to the instant motion are either not in dispute or have been alleged by the plaintiff.

application expressly designated her position as "terminable-at-will." Frechette placed her initials on a line immediately following this provision, attesting that she understood it. Upon being hired, Frechette also signed an acknowledgment form indicating that her employment was on an at-will basis.

Frechette received favorable evaluations from Wal-Mart and was eventually promoted to district manager. In September 1992, the defendant issued the plaintiff a company car, a company phone card, and a company credit card. However, the company did not provide Frechette with a copy of its travel manual. The manual, which Wal-Mart claims it routinely gives to employees, expressly states that alcoholic beverages purchased with business meals are to be borne as personal expenses and that employees are not permitted to use the company credit card for personal expenses, even if they reimburse the company.

On several occasions Frechette witnessed her superiors purchasing alcoholic beverages with their company credit cards. Frechette acknowledges that on several occasions, she too purchased alcohol on her company credit card and reimbursed the company. On October 22, 1993, however, Wal-Mart terminated Frechette's employment because she had charged two alcoholic beverages on her company credit card in violation of company policy.

2

Discussion

I. Defendant's Motion for Summary Judgment

Wal-Mart asserts that it is entitled to summary judgment on count I because it terminated Frechette for a legitimate reason, i.e., the use of the credit card in violation of company policy. Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 1. Wal-Mart argues that the legitimate basis for Frechette's termination prevents her from satisfying either of the elements necessary for a wrongful termination claim under New Hampshire law. Id. at 9-15. Wal-Mart further asserts that the legitimacy of its termination of Frechette compels the court to enter summary judgment in its favor on the breach of contract claim asserted in count II. Defendant's Reply to Objection to Motion for Summary Judgment ¶ 2.

Frechette disputes Wal-Mart's contention that the termination was legitimate. Specifically, she argues that Wal-Mart acted in bad faith by terminating her for the violation of a policy of which she was not aware. Plaintiff's Memorandum of Law in Support of Objection to Motion for Summary Judgement at 5-7. She further claims that she was terminated for performing acts that public policy encourages: working diligently, following promulgated rules and policies, and relying in good faith upon her employer's representations regarding company policy. Id. at

9. Frechette also argues that the defendant's motion for summary judgment addresses only her wrongful termination claim and, as such, does not reach her breach of contract claim. Id. at 1-2.

The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the entire record in the light most favorable to the nonmoving party, "`indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990), cert. denied, 112 S. Ct. 2965 (1992)).

A. Wrongful Termination

New Hampshire has long recognized that public policy militates against the termination of at-will employees in bad faith. In Monge v. Beebe Rubber Co., the New Hampshire Supreme Court held that a bad-faith termination breached the contract between the employer and the at-will employee. 114 N.H. 130, 133, 316 A.2d 549, 551 (1974). The court later "construe[d] Monge to apply only to a situation where an employee is

4

discharged because he performed an act that public policy would encourage, or refused to do that which public policy would condemn." Howard v. Dorr Woolen Company, 120 N.H. 295, 297, 414 A.2d 1273, 1274 (1980). The court has since made clear that an action for wrongful termination must include proof of bad faith, malice, or retaliation on the part of the employer, and proof that the employee was terminated for doing something that public policy would encourage or for refusing to do something that public policy would discourage. Cloutier v. A. & P. Tea Co., 121 N.H. 915, 921-22, 436 A.2d 1140, 1143-44 (1981); see also Short v. School Admin. Unit. No. 16, 136 N.H. 76, 84; 612 A.2d 364, 370 (1992); Cilley v. New Hampshire Ball Bearings, Inc., 128 N.H. 401, 405-06, 514 A.2d 818, 821 (1986). Inquiry into the public policy component must focus on the acts of the employee and on their relationship to public policy, not on the mere articulation of a public policy by the employee. See Dunnington v. Essex Group, Inc., No. 93-271-JD, slip op. at 5 (D.N.H. Dec. 8, 1993) (higher productivity and keeping individuals off public assistance are laudable goals but not acts that public policy would encourage).

Satisfaction of the public policy component of a wrongful termination claim is typically a question for the jury to decide. Cloutier, 121 N.H. at 924, 436 A.2d at 1145. However, at times

5

"the presence or absence of a public policy [may be] so clear that a court may rule on its existence as a matter of law, and take the question away from the jury."  Short, 136 N.H. at 84, 612 A.2d at 370 (citation omitted) (holding that an employee's refusal to criticize his superior could not form the basis of a public policy); see also MacDonald v. Tandy Corp., 796 F. Supp. 623, 627-28 (D.N.H. 1992) (overruling jury's determination that employee was terminated in violation of public policy encouraging employees to cooperate with theft investigations where investigation led employer to believe that employee had committed theft), aff'd, 983 F.2d 1046 (1st Cir. 1993).

Wal-Mart argues that it terminated Frechette for charging alcohol on her company credit card and that public policy does not encourage such conduct.  Wal-Mart's Motion for Summary Judgment at 14.  The court finds that as a matter of law the purchase of alcohol with a company credit card is not an act that public policy would encourage.

Frechette acknowledges this conclusion but takes a broader view of the conduct for which she was terminated.  However, Frechette's suggestion that she was terminated for working diligently and for following the rules and policies of her employer proves too much.  If public policy encouraged an at-will employee to follow only those rules actually known by the

6

employee, employees could insulate themselves from other policies simply by remaining oblivious to them.

In addition, Frechette's argument that she was terminated for relying on her employer's representations regarding its policies, an apparent reference to Wal-Mart's condonation of prior alcohol purchases by Frechette and her supervisors on company credit cards, is without merit. The public policy component of a wrongful termination claim is not satisfied by a bald assertion that an employer has waived the right to enforce its own rules and regulations. Arguably, Wal-Mart's condonation of the use of credit cards to charge alcoholic beverages is relevant to the question of whether it acted in bad faith in discharging Frechette. However, Wal-Mart's actions have no bearing on the public policy inquiry; it is the conduct of the employee, not the employer, that must be evaluated in assessing the public policy component. Thus, the court finds that Frechette has not articulated a public policy sufficient to satisfy a wrongful termination claim under New Hampshire law, and does not reach the issue of whether Wal-Mart terminated the plaintiff in bad faith.

B.    Breach of Contract

The court next considers Wal-Mart's argument that entry of summary judgment on the wrongful termination claim compels entry of summary judgment on the contract claim.  The New Hampshire Supreme Court has been inconsistent in its characterization of the wrongful termination cause of action.  Compare Monge, 114 N.H. at 133, 316 A.2d at 551 (holding that the bad-faith termination of an at-will employee constitutes a breach of the employment contract) with Cloutier, 121 N.H. at 920, 436 A.2d at 1143 (referring to the wrongful termination cause of action as a tort) and id. at 925, 436 A.2d at 1145 (dissenting opinion) (same).  However, this court has resolved the issue, ruling that wrongful termination is a tort.  Hutton v. Essex Group, Inc., 885 F. Supp. 332, 332 & n.1 (D.N.H. 1994) (relying on the language in Cloutier and noting that this is the majority view); see also Vandegrift v. American Brands Corp., 572 F. Supp. 496, 498 (D.N.H. 1983) (referring to the "hybridization" between tort and contract that Monge and its progeny have produced).

However, the characterization of wrongful termination as a tort does not mean that a plaintiff, having failed under a wrongful termination theory, can litigate the same dispute under a contract theory merely by alleging a breach of the implied covenant of good faith implicit in all contracts under New

8

Hampshire law, see Cloutier, 121 N.H. at 920, 436 A.2d at 1143 (citing Bursey v. Clement, 118 N.H. 412, 414, 387 A.2d 346, 347-48 (1978) and Seaward Construction Co. v. City of Rochester, 118 N.H. 128, 129, 383 A.2d 707, 708 (1978)). Although wrongful termination had its genesis in contract, see Monge, 114 N.H. at 133, 316 A.2d at 551, the subsequent cases characterizing wrongful termination as a tort have neither created an entirely new tort nor necessitated the creation of a new cause of action in contract. Cf. Bergeron v. Traveler's Insurance Co., 125 N.H. 107, 108, 480 A.2d 42, 42 (1984) (noting that the explicit introduction of a public policy component into wrongful termination did not create a new rule of law). Rather, the traditional cause of action for wrongful termination has evolved from its contractual roots and is now treated as a tort. It follows that any claim of a terminated at-will employee based on a contract theory must still be brought under the rubric of wrongful termination and, as such, must satisfy the public policy component of that cause of action. Accordingly, the court holds that a separate contractual remedy is not available to an at-will employee who alleges that she was terminated in bad faith but who cannot satisfy the public policy prong of the wrongful termination cause of action.

## II. Plaintiff's Motion for Reconsideration

Frechette argues that the court improperly dismissed count III of her complaint in its endorsed order of August 29, 1995 (citing Dunnington v. Essex Group, Inc., No. 93-271-JD (D.N.H. Dec. 8, 1993)). The court grants the motion to reconsider that part of Frechette's argument not controlled by Dunnington and will address the question of whether the exclusive remedy provision of the New Hampshire workers' compensation statute, N.H. Rev. Stat. Ann. ("RSA") § 281-A:8, bars the plaintiff from maintaining a claim for intentional infliction of emotional distress arising solely out of her termination.

The exclusive remedy provision "prohibits an employee from maintaining a common-law action against his employer for personal injuries arising out of the employment relationship." Brewer v. K.W. Thompson Tool Co., 647 F. Supp. 1562, 1565 (D.N.H. 1986) (construing RSA § 281:12, predecessor to RSA § 281-A:8). The court recently has held that personal injuries "arising out of the employment relationship" include those suffered from the "intentional infliction of emotional distress occasioned solely by reason of discharge." Kopf v. Chloride Power Electronics, Inc., 882 F. Supp. 1185, 1191 (D.N.H. 1995) ("[D]ischarge . . . forms one of the many experiences an employee may encounter along the `course of his employment.'"); see also Censullo v. Brenka

10

<u>Video, Inc.</u>; 989 F.2d 40, 43 (1st Cir. 1993) ("Emotional distress is a personal injury, not subject to recovery in a common law action under the workmen's compensation statute."); <u>Bourque v. Town of Bow</u>, 736 F. Supp. 398, 403-04 (D.N.H. 1990) (exclusive remedy provision bars claims for personal injuries arising from wrongful termination, including permanent physical and psychological damages and emotional distress).

Frechette bases her intentional infliction of emotional distress claim on Wal-Mart's conduct involving her termination. Amended Complaint ¶¶ 2-3. Frechette's claim is barred by the exclusive remedy provision of the worker's compensation statute because Wal-Mart's conduct arose in the course of Frechette's employment. Accordingly, the plaintiff cannot maintain her claim.

<u>Conclusion</u>

The defendant's motion for summary judgment (document no. 23) is granted as to counts I and II. The plaintiff's motion for reconsideration (document no. 23) of the court's August 29, 1995,

11

order is granted but the relief requested is denied.  The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

September 26, 1995

cc:  Roger B. Phillips, Esquire
     E. Tupper Kinder, Esquire